NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
AARON C.G. CARPENTER (Cal. Bar No. 273446)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-3579
        Facsimile: (213) 894-7819
        E-mail: Aaron.Carpenter2@usdoj.gov

Attorneys for Defendant
William Barr, Unites States Attorney General

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GREG GARCIA,<br><br>        Plaintiff,<br><br>        v.<br><br>WILLIAM BARR, Attorney General, et al.,<br><br>        Defendants. | No. CV 20-726-VAP (SHKx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Defendant's Evidentiary Appendix and Proposed Order filed concurrently herewith*<br><br>Hearing on Motion:<br><br>Date:    Monday, November 16, 2020<br>Time:    2:00 p.m.<br>Place:   First Street Courthouse<br>         Courtroom 8A<br><br>Honorable Virginia A. Phillips<br>United States District Judge |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................. vi

I.  INTRODUCTION ............................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................... 1

    A.  Plaintiff Sought EEO Counseling on April 20, 2018. ........................... 2

    B.  Plaintiff Files an EEO Complaint on May 26, 2018, Which He
        Amended on August 30, 2018. ............................................................... 2

    C.  The Final Agency Decision, Issued on June 30, 2020, Finds No
        Discrimination. ....................................................................................... 4

    D.  Plaintiff Filed No Other EEO Complaints Prior to May 26, 2018. ....... 4

III. LEGAL STANDARD ....................................................................................... 4

IV. ARGUMENT .................................................................................................... 5

    A.  All claims occurring before March 6, 2018 must be dismissed as
        time-barred. ............................................................................................ 5

    B.  Plaintiff's Administratively Unexhausted Claim of Being Called a
        "Coconut" Warrants Dismissal. ............................................................. 7

    C.  Plaintiff's hostile work environment claim fails as a matter of law. ...... 9

        1.  Plaintiff's allegations do not state a hostile work environment
            claim based upon race. ................................................................. 9

        2.  Plaintiff's allegations do not form a basis for a hostile work
            environment claim. ..................................................................... 10

        3.  Plaintiff's allegations fail to state a claim for hostile work
            environment because they are not severe and pervasive. ............ 11

    D.  Plaintiff's race/color discrimination claim fails as a matter of law. ...... 12

        1.  Plaintiff fails to present a cognizable claim of discrimination
            regarding his lowered performance rating. ................................. 12

        2.  Plaintiff fails to present a cognizable claim of discrimination
            regarding his remaining unexhausted and untimely claims. ........ 14

V.  CONCLUSION ............................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................passim

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) ......................................................................................8

*Baptiste v. LIDS*,
  No. C 12-5209, 2014 WL 523024 (N.D. Cal. Feb. 5, 2014) ......................................11

*Belgrove v. N. Slope Borough Power, Light & Pub. Works*, No. 3:12-CV-00178 JWS,
  2013 WL 6045686 (D. Alaska Nov. 14, 2013) ............................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................12, 15

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2000) ......................................................................................11

*Bruns v. Nat'l Credit Union Admin.*,
  122 F.3d 1251 (9th Cir. 1997) ..................................................................................12, 15

*Cherosky v. Henderson*,
  330 F.3d 1243 (9th Cir. 2003) ................................................................................vi, 5

*EEOC v. Farmer Bros. Co.*,
  31 F.3d 891 (9th Cir. 1994) ..........................................................................................7

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ..........................................................................................vi, 9, 11

*Fort Bend Cty., Texas v. Davis*,
  139 S. Ct. 1843 (2019) ..................................................................................................7

*Freeman v. Oakland Unif. School Dist.*,
  291 F.3d 632 (9th Cir. 2002) ........................................................................................8

*Goel v. Shah*,

No. 13-3586, 2014 WL 2154005 n.2 (N.D. Cal. May 22, 2014) .................................. 5

*Green v. L.A. Cnty. Superintend. of,*

*Schs.*, 883 F.2d 1472 (9th Cir. 1989) ........................................................... 7

*Harris v. Forklift Sys., Inc.*,

510 U.S. 17 (1993) ........................................................................... 11

*Henry v. Regents of the Univ. of Cal.*, C 12-5818 PJH,

2014 WL 709971 (N.D. Cal. Feb. 24, 2014) ................................................ 9

*Ivey v. Bd. of Regents*,

673 F.2d 266 (9th Cir. 1982) ................................................................. 12

*Jablon v. Dean Witter & Co.*,

614 F.2d 677 (9th Cir. 1980) ............................................................. 4, 5

*Kennedy v. Kings Mosquito Abatement Dist.*,

No. 12-1458, 2013 WL 1129202 (E.D. Cal. Mar. 18, 2013) ....................................... 10

*Kortan v. Cal. Youth Auth.*,

217 F.3d 1104 (9th Cir. 2000) ......................................................... 11, 14

*Kraus v. Presidio Trust Facilities Div./Residential Management Branch*,

342 Fed. Appx. 284 (9th Cir. 2009) ............................................... vi, 1, 13, 14

*Lacayo v. Donahoe*,

No. 14-04077, 2015 WL 993448 (N.D. Cal. Mar. 4, 2015) ............................. 1, 2, 3, 5

*Lancaster v. County of Yolo*,

No. 03-2342, 2007 WL 1888773 n.14 (E.D. Cal. June 29, 2007) ............................... 10

*Landers v. Quality Commc'ns, Inc.*,

771 F.3d 638 (9th Cir. 2014) ................................................................. 4

*Leong v. Potter*,

347 F.3d 1117 (9th Cir. 2003) ................................................................. 7

*Lyons v. England*,

307 F.3d 1092 (9th Cir.2002) ................................................................. 14

iii

*Mainz Brady Grp., Inc. v. Shown*,
 2017 WL 4538968 (W.D. Wash. Oct. 11, 2017) ......................................16

*Manatt v. Bank of America*,
 339 F.3d 792 (9th Cir. 2003) ...............................................................11

*Molina v. L.A. Cnty. Dep't of Mental Health*,
 58 F. App'x 311 (9th Cir. 2003) .............................................................4

*Nat'l R.R. Passenger Corp. v. Morgan*,
 536 U.S. 101 (2002)..............................................................................6

*Phan v. Employment Dev. Dep't*,
 No. 16-256, 2017 WL 3116826 (E.D. Cal. July 21, 2017)............................7

*Porter v. Cal. Dep't of Corr.*,
 419 F.3d 885 (9th Cir. 2005) ...................................................vi, 6, 7, 9

*Rosa v. Scottsdale Memorial Health Sys., Inc.*,
 No. 96-17034, 1997 WL 753359 (9th Cir. 1997) .......................................9

*Soares v. Cal. Dep't of Indus. Relations*,
 2016 WL 3519411 (E.D. Cal. 2016)........................................................10

Soares-*Haae v. Roche*,
 220 Fed. Appx. 695 (9th Cir. 2007)........................................................14

*Sommatino v. United States*,
 255 F.3d 704 (9th Cir. 2001) ............................................................vi, 7

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ...............................................................15

*Staudenmaier v. Orange County*,
 2014 WL 12629691 (C.D. Cal. Feb. 12, 2014) ..........................................8

*Tunnel v. Powell*,
 219 F. Supp. 2d 230 (N.D. Cal. 2002) ....................................................11

*Vasquez v. Cnty of Los Angeles*,

349 F.3d 634 (9th Cir. 2003) .......................................................... 12

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,

  65 F. Supp. 3d 932 (C.D. Cal. 2014) ............................................. 5

*Williams v. L.A. Unif. School Dist.*,

  2010 WL 4794943 (C.D. Cal. 2010) ........................................... 10

*Yonemoto v. Shinseki*,

  3 F. Supp. 3d 827 (D. Haw. 2014) ................................................. 6

*Yonemoto v. Shinseki*,

  3 F. Supp. ......................................................................................... 6

**Statutes**

42 U.S.C. §2000e-16(c) ...................................................................... 7

42 U.S.C. § 2000e–2(a)(1) ............................................................... 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................ vi

Regulations

29 C.F.R. §1614 ................................................................................... 7

29 C.F.R. § 1614.105(a) ..................................................................... 5

29 C.F.R. § 1614.105(a)(1) ................................................................ 5

1    <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2         **PLEASE TAKE NOTICE** that, on November 16, 2020, at 2:00 p.m., or as soon

3    thereafter as this matter may be heard, Defendant William Barr, United States Attorney

4    General ("Defendant"), will, and hereby does, move this Court for an order dismissing

5    Plaintiff Greg Garcia's First Amended Complaint pursuant to Federal Rule of Civil

6    Procedure 12(b)(6) on the following grounds:

7         1.  Plaintiff failed to exhaust all claims except for his lowered performance rating

8             allegation. Accordingly, Plaintiff's time-barred and unexhausted claims

9             warrant dismissal. *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir.

10            2001); *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003).

11        2.  Plaintiff's alleged lowered performance rating is not an adverse action as a

12            matter of law because he received an "excellent" overall performance rating,

13            which remained unchanged year-over-year. *Kraus v. Presidio Trust Facilities*

14            *Div./Residential Management Branch*, 342 Fed. Appx. 284, 287 (9th Cir.

15            2009). Thus, Plaintiff fails to state a cognizable claim for race/color

16            discrimination.

17        3.  Plaintiff's claim for hostile work environment fails as his allegations fail to

18            state a cognizable hostile work environment claim based upon race/color.

19            *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005); *Faragher v.*

20            *City of Boca Raton*, 524 U.S. 775, 788 (1998).

21        This Motion will be made before the Honorable Virginia A. Phillips, United States

22   District Judge, located at the First Street Courthouse, 350 West 1st Street, Courtroom

23   8A, Los Angeles, California.

24   ///

25   ///

26   ///

27   ///

28   ///

1       This Motion is based upon this Notice, the attached Memorandum of Points and

2  Authorities, the Evidentiary Appendix, the files and records in this case, and such other

3  evidence or argument as the Court may consider. This Motion follows the conference of

4  counsel pursuant to Local Rule 7-3, which commenced on September 30, 2020 and

5  concluded on October 5, 2020.

6   Dated: October 7, 2020                NICOLA T. HANNA
United States Attorney

7                                   DAVID M. HARRIS
Assistant United States Attorney

8                                   Chief, Civil Division
JOANNE S. OSINOFF

9                                   Assistant United States Attorney
Chief, General Civil Section

10                                 _/s/ Aaron C.G. Carpenter_

11                                   AARON C.G. CARPENTER
Assistant United States Attorney

12

13                                   Attorneys for Defendant
William Barr. United States Attorney General

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff's First Amended Complaint ("FAC"), alleging race/color[1] discrimination and hostile work environment under Title VII, should be dismissed in its entirety. Plaintiff failed to exhaust all claims except for his lowered performance rating allegation. Moreover, the alleged lowered performance rating is not an adverse action as a matter of law because he received an "excellent" overall performance rating. *Kraus v. Presidio Trust Facilities Div./Residential Management Branch*, 342 Fed. Appx. 284, 287 (9th Cir. 2009). Finally, even if this action were not subject to dismissal for the above reasons, the action should be dismissed for failure to state a cognizable claim. Accordingly, Plaintiff's action warrants dismissal pursuant to Rule 12(b)(6).

### II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff is a Hispanic male who works for the Federal Bureau of Prisons ("BOP") at the Federal Correctional Complex in Victorville, California. FAC ¶ 8. Plaintiff's FAC, filed on September 23, 2020, alleges Defendant discriminated against Plaintiff, and created a hostile work environment, due to Plaintiff's race and color.[3] *Id.* at ¶ 9. Specifically, Plaintiff has alleged the following events:

1.    Beginning in April 2017, Plaintiff's supervisor referred to him as a "coconut" and compared him to other inmates. FAC ¶¶ 13-15.

2.    On an unspecified date, Plaintiff's supervisor "discouraged a co-worker

---

[1] References to Plaintiff's race below are references to Plaintiff's race and color.

[2] Unless otherwise noted, the facts recited *infra* are derived from (1) the non-conclusory allegations in Plaintiff's FAC, which are accepted here solely for the purpose of this motion, and (2) the administrative record of a plaintiff's claims before the EEOC, for which Defendant requests the Court to take judicial notice as matters of public record." *See Lacayo v. Donahoe*, No. 14-04077, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015).

[3] Plaintiff filed his FAC on September 23, 2020 in response to Defendant's Motion to Dismiss Plaintiff's initial Complaint. *See* Dkt. Nos. 11, 12. Plaintiff's initial Complaint and FAC are nearly identical, except that Plaintiff's FAC removes claims for gender and national origin discrimination and retaliation. *Compare* Compl. *with* FAC.

1

1    from helping Plaintiff" and "stating in effect that Plaintiff was
2    incompetent." *Id.* at ¶ 15.

3    3.    On an unspecified date, Plaintiff's supervisor issued Plaintiff a letter
4          regarding his leave usage. *Id.* at ¶ 16.

5    4.    On an unspecified date, Plaintiff's supervisors "downgrad[ed] his
6          performance log entries" and thereafter "downgraded [his] performance
7          evaluation from Excellent to Satisfactory." FAC ¶¶ 16-17.

8    Plaintiff's FAC also inadvertently references "retaliation" and "gender
9    discrimination." *See* FAC preamble (claiming "retaliation") & ¶ 8, 12-15 (referencing
10   genders), 21 (alleging "gender discrimination"). However, Plaintiff has stipulated that
11   those references were inadvertent and that he is not alleging claims for retaliation and
12   gender discrimination against Defendant. Dkt. No. 13.

13   **A.    Plaintiff Sought EEO Counseling on April 20, 2018.**

14   On April 20, 2018, Plaintiff sought EEO counseling, alleging discrimination and
15   harassment since April 10, 2017 because "[m]anagement subjected him to lack of
16   communication, lies, an inmate comparison, a leave abuse letter, log entries, and
17   micromanagement." Declaration of Seth M. Bogin ("Bogin Decl.") Ex. B, at 3. Plaintiff
18   specifically alleged—through an event journal he created—that his supervisor compared
19   him to an inmate on July 5, 2017, required him to use two hours of leave on September
20   27, 2017, issued him a "leave abuse letter" on November 17, 2017, and gave him a "bad
21   evaluation" on April 18, 2018. *Id* at 6-8. Plaintiff's event journal otherwise generally
22   describes Plaintiff's thoughts, suspicions, and day-to-day communications with his
23   supervisor, staff, and inmates, but it does not allege that Plaintiff's supervisor referred to
24   him as a "coconut" or similar names. *Id.*

25   **B.    Plaintiff Files an EEO Complaint on May 26, 2018, Which He**
26   **Amended on August 30, 2018.**

27   On May 26, 2018, Plaintiff filed an EEO Complaint of Discrimination with the
28   BOP, Case No. BOP-2018-0639, alleging that he suffered race or color discrimination in

connection with the same events identified on his event journal. Bogin Decl., ¶ 7 & Ex. C, at 2-4; *cf.* Bogin Decl. Ex. B, at 6-8. It appears that the alleged "bad evaluation" Plaintiff received on April 18, 2018 is either his 2017 fourth quarter performance log for the period beginning January 1, 2018 through March 31, 2018, which contains satisfactory and excellent marks, or his 2017 annual performance evaluation for which he received an overall performance rating of "excellent". [4] Bogin Decl. Ex. C, at 24; Ex. H, at 1. As with his EEO Counseling Report, Plaintiff's EEO Complaint does not allege that his supervisor called him a "coconut" or similar names. *See id.*

Plaintiff's EEO Complaint was accepted for investigation on July 5, 2018 on the following grounds:

> [Discrimination] on the bases of race/color (Hispanic) and reprisal in relation to the following: From April 10, 2017 through April 18, 2018, you were subjected to harassment by management in the form of lack of communication, comparison to an inmate, a leave abuse letter, unfavorable log entries and micromanagement.

Bogin Decl. Ex. D.

On August 30, 2018, Plaintiff amended his EEO Complaint to allege that "[o]n August 8, 2018, [Plaintiff] became aware that [his] [2018] first quarter evaluation was lowered." Bogin Decl. Ex. E.[5]

---

[4] The quarterly performance logs are used to generate an annual performance appraisal. Notably, Plaintiff's annual performance appraisals for 2016 and 2017 gave Plaintiff an overall performance rating of excellent, or "EX". *Compare* Bogin Decl., Ex. C at 26 (2016 Employee Performance Appraisal, for the rating period April 1, 2016 to March 31, 2017, signed April 10, 2017) *with* Ex. H at 1 (2017 Employee Performance Appraisal, for the rating period April 1, 2017 to March 31, 2018, signed April 18, 2018). Exhibit H, taken from the Record of Investigation for Plaintiff's EEO Complaint, Case No. BOP-2018-0639, is a copy of Plaintiff's 2017 Employee Performance Appraisal and Quarterly Performance Logs.

[5] As with his EEO Counseling Report and initial EEO Complaint, Plaintiff's amendment does not allege that his supervisor called him a "coconut" or similar names. Bogin Decl. Ex. E.

1    Notably, Plaintiff's first quarter rating for 2018 contains the same "satisfactory"

2    and "excellent" marks in the same categories as his fourth quarter rating for 2017.[6]

3    *Compare* Bogin Decl. Ex. E, at 6-9 (first quarter performance log for 2018) *with* Ex. H,

4    at 6-7 (fourth quarter performance log for 2017).

5    **C.    The Final Agency Decision, Issued on June 30, 2020, Finds No**

6    **Discrimination.**

7    On June 30, 2020, a final agency decision was issued finding no discrimination in

8    Plaintiff's EEO Complaint, Case No. BOP-2018-0639. Bogin Decl. Ex. G.

9    **D.    Plaintiff Filed No Other EEO Complaints Prior to May 26, 2018.**

10    Plaintiff did not file any other EEO complaint of discrimination with the BOP

11    before filing his above-referenced EEO Complaint on May 26, 2018. Bogin Decl. ¶ 3 &

12    Ex. A.

13    **III.    LEGAL STANDARD**

14    Rule 12(b)(6) provides for dismissal where the factual allegations in the complaint

15    fail to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

16    662, 678 (2009). Allegations containing "no more than conclusions[] are not entitled to

17    the assumption of truth." *Id.* at 679. A plaintiff must provide "factual content that allows

18    the court to draw the reasonable inference that the defendant is liable for the misconduct

19    alleged." *Id.* at 678. "Where a complaint pleads facts that are merely *consistent* with a

20    defendant's liability, it stops short of the line between possibility and plausibility of

21    entitlement to relief." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir.

22    2014) (quoting *Iqbal*, 556 U.S. at 678) (emphasis added).

23    Dismissal under Rule 12(b)(6) is also proper where claims are time-barred or

24    precluded by another affirmative defense. *See Jablon v. Dean Witter & Co.*, 614 F.2d

25    677, 682 (9th Cir. 1980) (affirming dismissal based on a statute of limitations grounds);

26

27

28    [6] The BOP's quarterly periods run annually as follows: first quarter, April 1 to
June 30; second quarter, July 1 to September 30; third quarter, October 1 to December
31; and fourth quarter: January 1 to March 30.

4

1  *Molina v. L.A. Cnty. Dep't of Mental Health*, 58 F. App'x 311, 313–14 (9th Cir. 2003)

2  (same). In ruling on such a motion, a court may consider the allegations in the complaint

3  as well as documents attached to the complaint, documents incorporated by reference in

4  the complaint, matters of public record, or facts otherwise subject to judicial notice.

5  *Jablon*, 614 F.2d at 682; *see Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F.

6  Supp. 3d 932, 942 (C.D. Cal. 2014) (collecting authorities). "In the context of

7  employment discrimination cases in particular, it is well established that courts may

8  consider the administrative record of a plaintiff's claims before the EEOC as judicially

9  noticeable matters of public record." *Lacayo*, No. 14-04077, 2015 WL 993448, at *9; *see

10 *Goel v. Shah*, No. 13-3586, 2014 WL 2154005, at *2 n.2 (N.D. Cal. May 22, 2014)

11 (taking judicial notice of the plaintiff's EEO counseling report, EEOC charge, and

12 related administrative rulings).

13 **IV.    ARGUMENT**

14      **A.    All claims occurring before March 6, 2018 must be dismissed as time-**

15           **barred.**

16      Other than Plaintiff's claim regarding his lowered performance rating, all of

17 Plaintiff's remaining claims should be dismissed as untimely because he failed to seek

18 EEO counseling for them within 45 days. Under federal regulations promulgated by the

19 EEOC, federal employees complaining of discrimination by a governmental agency

20 "must consult a[n EEO] Counselor prior to filing a complaint in order to try to

21 informally resolve the matter," 29 C.F.R. § 1614.105(a), and they "must initiate contact

22 with a Counselor within 45 days of the date of the matter alleged to be discriminatory,"

23 29 C.F.R. § 1614.105(a)(1). "Failure to comply with this regulation is fatal to a federal

24 employee's discrimination claim." *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th

25 Cir. 2003) (quotations omitted).

26      Here, Plaintiff contacted an EEO counselor on April 20, 2018. Bogin Decl. Ex. B,

27 at 2. Thus, the only timely matters alleged in the FAC are those occurring on or after

28 March 6, 2018, 45 days before April 20, 2018. The only incident alleged in the FAC that

1    falls within this time period is Plaintiff's alleged lowered performance rating. FAC ¶¶
2    16-17. All other incidents alleged in the FAC occurred before March 6, 2018 (*cf.* Bogin
3    Decl. Ex. C, at 2-4) and must be dismissed with prejudice as time-barred.

4           Furthermore, Plaintiff's claim regarding hostile work environment does not
5    exempt him from exhaustion requirements. In *Nat'l R.R. Passenger Corp. v. Morgan*,
6    536 U.S. 101, 111, 114 (2002), the Supreme Court overturned the "continuing violation"
7    doctrine as it applied to discrete employment acts which occur outside the statutory time
8    period. 536 U.S. at 101. Following *Morgan*, federal courts have distinguished between
9    "discrete" and "non-discrete" acts of discrimination, reasoning that only timely *non-*
10   *discrete* acts can establish a hostile work environment claim. *Porter v. Cal. Dep't of*
11   *Corr.*, 419 F.3d 885, 893 (9th Cir. 2005), 419 F.3d at 892–93; *Yonemoto v. Shinseki*, 3 F.
12   Supp. 3d 827, 845 (D. Haw. 2014) ("*Morgan* compels the conclusion that the universe of
13   'discrete acts' . . . is mutually exclusive of the universe of acts that can comprise a
14   hostile work environment claim."). While a discrete act is sufficiently material to give
15   rise to an actionable claim of discrimination or retaliation, such as "termination, failure
16   to promote, denial of transfer, or refusal to hire" (*Yonemoto*, 3 F. Supp. at 842 (quoting
17   *Morgan*, 536 U.S. at 114)), by contrast, a non-discrete act is not independently
18   actionable. *Id.* at 845. A timely made non-discrete act can only give rise to a Title VII
19   claim when, in combination with other non-discrete acts, it evinces objectively severe
20   and pervasive harassment. *Id.* at 845. As the Ninth Circuit explained in *Porter*:

21                  [W]e refuse to mix recent discrete acts like tinder with the planks
22                  of ancient [non-discrete acts] and then, regardless of whatever it
23                  was that set the spark in the furnace, call the fire that ignites
24                  therefrom a hostile environment. If the flames of an allegedly
25                  hostile environment are to rise to the level of an actionable claim,
26                  they must do so based on the fuel of *timely non-discrete acts*."
27   419 F.3d at 893 (emphasis added).
28

1    Here, Plaintiff's FAC identifies no timely non-discrete acts upon which to base a

2    hostile work environment claim. *See id.; see generally* FAC; *cf.* Bogin Decl. Ex. C, at 4.

3    Rather, Plaintiff's only timely claim is a discrete act regarding his lowered performance

4    rating. *Porter*, 419 F.3d at 893 (negative performance evaluation is a discrete act).

5    Because a discrete act cannot serve as the basis for a hostile work environment claim,

6    and Plaintiff has alleged no timely non-discrete acts, Plaintiff's claim for hostile work

7    environment fails. *Id.*; *see also Phan v. Employment Dev. Dep't*, No. 16-256, 2017 WL

8    3116826, at *4 (E.D. Cal. July 21, 2017) ("[D]iscrete acts cannot be part of a hostile

9    work environment claim.").

10   **B.    Plaintiff's Administratively Unexhausted Claim of Being Called a**

11   **"Coconut" Warrants Dismissal.**

12   All claims that Plaintiff failed to present in his EEO Complaint warrant dismissal

13   for lack of compliance with Title VII's mandatory claim processing requirements. *Leong*

14   *v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003); *see also Fort Bend Cty., Texas v. Davis*,

15   139 S. Ct. 1843, 1851 (2019) (clarifying that Title VII's claim-processing rules are

16   mandatory and non-jurisdictional). In order to litigate a Title VII claim in federal district

17   court, Plaintiff must have first exhausted his administrative remedies. *See Sommatino v.*

18   *United States*, 255 F.3d 704, 708 (9th Cir. 2001). Only after the administrative remedies

19   have been exhausted may he seek judicial review. 42 U.S.C. §2000e-16(c); 29 C.F.R.

20   §1614. An EEOC remedy has been exhausted for a given claim where "that claim fell

21   within the scope of the EEOC's actual investigation or an EEOC investigation which can

22   reasonably be expected to grow out of the charge of discrimination." *EEOC v. Farmer*

23   *Bros. Co.,* 31 F.3d 891, 899 (9th Cir. 1994) (quotations and citation omitted).

24   "Incidents of discrimination not included in an EEOC charge may not be

25   considered by a federal court unless the new claims are like or reasonably related to the

26   allegations contained in the EEOC charge." *Green v. L.A. Cnty. Superintend. of Schs*.,

27   883 F.2d 1472, 1475–76 (9th Cir. 1989). In determining whether a new claim is like or

28   reasonably related to the allegations in the EEO charge, the court should consider "such

7

1    factors as the alleged basis of the discrimination, dates of discriminatory acts specified

2    within the charge, perpetrators of discrimination named in the charge, and any locations

3    at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dept*., 276

4    F.3d 1091, 1100 (9th Cir. 2002) (citation omitted); *see also Freeman v. Oakland Unif.*

5    *School Dist*., 291 F.3d 632, 637 (9th Cir. 2002) (in "reasonably related" determination,

6    analyzing whether incidents would have been "necessary to, or addressed in, the scope of

7    an investigation"; and finding that alleged discrimination during special election in EEO

8    Complaint were not reasonably related to subsequent incidents of alleged discrimination

9    in teaching assignments, class size, and working hours); EEOC Mgmt. Directive 110, ch.

10   6, § 6.D ("The proper scope of an investigation is dictated by the facts at issue";

11   investigators must avoid "wast[ing] resources and delay[ing] resolution" and tailor

12   investigations as "appropriate to determine the claims raised by the complaint.").

13          Here, Plaintiff's FAC alleges that beginning in April 2017, Plaintiff's supervisor

14   referred to him as a "coconut," a derogatory reference to Plaintiff's race and skin color.

15   FAC ¶¶ 13-15. However, Plaintiff did not administratively exhaust this claim before

16   bringing this action. *See* Bogin Decl. Exs. C (Plaintiff's EEO Complaint), D (Issues

17   Accepted for Investigation), & E (Plaintiff's Amendment to EEO Complaint).

18          Indeed, Plaintiff's event log (*see* Bogin Decl. Ex. C, at 2-4) does not account for

19   anyone having called him a "coconut" or any other name, term, or epithet in April 2017

20   or thereafter, even though it describes in detail other events occurring in this same

21   period. Likewise, Plaintiff's Affidavit in the underlying EEO Investigation does not

22   mention the term "coconut" or other name-calling. Bogin Decl. Ex. F. While Plaintiff

23   alleged that management "compared his upbringing" to an inmate's insofar as the two

24   "grew up in the same city" to point out that "[they could] be in the same position" but

25   "chose [] different route[s]" (Bogin Decl. Ex. C, at 3-4), any investigation into that

26   allegation would not have reasonably resulted in an investigation of name-calling or use

27   of slurs around the office. *See Staudenmaier v. Orange County*, 2014 WL 12629691, at

28   *7-8 (C.D. Cal. Feb. 12, 2014), *aff'd*, 656 Fed. App'x 360 (9th Cir. 2016) (finding

8

employee failed to exhaust administrative remedies where allegations in district court complaint were not reasonably related to those in EEOC charge). "Plaintiff cannot simply mention the word 'harassment' in an administrative charge and receive a blank check to file suit on any racially-harassing conduct that he can now think of." *Henry v. Regents of the Univ. of Cal.*, C 12-5818 PJH, 2014 WL 709971 (N.D. Cal. Feb. 24, 2014). Accordingly, Plaintiff's allegation that he was called a "coconut" warrants dismissal for failure to exhaust. *Id.*

### C.   Plaintiff's hostile work environment claim fails as a matter of law.

Even if Plaintiff could identify timely non-discrete acts upon which to base a hostile work environment claim, such a claim warrants dismissal for additional reasons. To maintain a hostile work environment claim based on a plaintiff's protected characteristics, the plaintiff must allege facts showing that he or she (1) was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive work environment. *See Porter*, 419 F.3d at 892; 9th Cir. Civ. Jury Instr. 10.5 (2017 Edition) (June 2019 Update). Such conduct "must be extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

> 1.   Plaintiff's allegations do not state a hostile work environment claim based upon race.

Plaintiff's allegations regarding his supervisors' treatment of him fails to establish that it is conduct of a racial nature as required to state a hostile work environment claim. *See* FAC ¶¶ 13-17 (alleging he was prevented from getting help from a co-worker, suggested to be "incompetent," compared to an inmate with the "same upbringing," received a leave abuse letter and lowered performance rating, and called "coconut"); *Rosa v. Scottsdale Memorial Health Sys., Inc.*, No. 96-17034, 1997 WL 753359, at *1 (9th Cir. 1997) ("The problem with [the plaintiff's] racial harassment claim is that almost all of the incidents he cites as creating a hostile work environment were not racial in nature."). Indeed, Plaintiff does not even attempt to link his receipt of a leave abuse

1   letter to his race. FAC ¶ 16. Similarly, Plaintiff's alleged comparison to an inmate was
2   not racial in nature but allegedly made because "[they] had the 'same upbringing.'" FAC
3   ¶ 14. Likewise, allegations regarding the lack of co-worker assistance are not racial in
4   nature but appear to be based on his supervisor's belief that Plaintiff was "incompetent."
5   FAC ¶ 15. While Plaintiff's allegations about a lowered performance rating and being
6   called "coconut" include the conclusory claim that those events were "motivated by
7   race" and "hostile towards Plaintiff's race and color" (FAC ¶¶ 13, 17), such bare
8   assertions do not state a cognizable claim that Plaintiff was subject to conduct of a racial
9   nature. *See Iqbal*, 556 U.S. at 678 ("'naked assertion[s]' devoid of 'further factual
10  enhancement'" will not suffice).

2.   Plaintiff's allegations do not form a basis for a hostile work
     environment claim.

13          Many of the incidents alleged in the FAC—that Plaintiff was prevented from
14  getting help from a co-worker, suggested to be "incompetent," compared to an inmate
15  with the "same upbringing," received a leave abuse letter and lowered performance
16  rating—are discrete acts and pertain to "personnel management activity" insufficient to
17  state hostile work environment claim. *Porter*, 419 F.3d at 893 (negative performance
18  evaluation is a discrete act); *Phan*, 2017 WL 3116826, at *4 ("[D]iscrete acts cannot be
19  part of a hostile work environment claim."); *Lancaster v. County of Yolo*, No. 03-2342,
20  2007 WL 1888773, at *8 n.14 (E.D. Cal. June 29, 2007) ("Unlike other forms of
21  discrimination, harassment or 'hostile work environment' claims concern actions
22  'outside the scope of job duties which are not of a type necessary to business and
23  personnel management.'"); *see, e.g.*, *Kennedy v. Kings Mosquito Abatement Dist.*, No.
24  12-1458, 2013 WL 1129202, at *11 (E.D. Cal. Mar. 18, 2013) (holding that "subjecting
25  Plaintiff to different expectations and greater scrutiny," "selectively writing up or
26  reprimanding Plaintiff," and "providing poor performance evaluations" did not "fit into
27  the category of harassment as that term has been interpreted because they constitute acts
28  within the scope of employer-employee relations"); *Soares v. Cal. Dep't of Indus.*

10

1    *Relations*, 2016 WL 3519411, at *3 (E.D. Cal. 2016) (same, for "discipline, negative

2    comments about former female judges, overly scrutinized work that was inconsistent

3    with her actual work, undeservedly poor performance evaluations, and 'weekly tests and

4    work tallies'"); *Williams v. L.A. Unif. School Dist.*, 2010 WL 4794943, at *4 (C.D. Cal.

5    2010) (same, for receiving heavier job assignments, receiving a negative job reference,

6    not receiving overtime, and being transferred). Regardless, the "mere utterance of an

7    . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently

8    affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*,

9    510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

10                        3.    Plaintiff's allegations fail to state a claim for hostile work
11                              environment because they are not severe and pervasive.

12           Furthermore, even assuming that the non-discrete incidents alleged in the FAC

13   were racial in nature, the non-discrete incidents are not sufficiently severe or pervasive

14   to state a hostile work environment claim. The Supreme Court has "made it clear that

15   conduct must be extreme" to give rise to a hostile work environment, and such claims do

16   not encompass "the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788.

17   Title VII is not a "general civility code," and courts do not sit as a "super-personnel

18   department." *Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000); *Tunnel v.*

19   *Powell*, 219 F. Supp. 2d 230, 239 (N.D. Cal. 2002).

20           Plaintiff's allegation that he was called "incompetent" on one occasion fails to

21   demonstrate how it was either severe or pervasive, as this is not "extreme" conduct.

22   *Faragher*, 524 U.S. at 788. Similarly, even if it had been exhausted, Plaintiff's claim that

23   he was called a "coconut" fails to establish facts demonstrating that the conduct was

24   severe or pervasive.[7] Plaintiff's remaining claims likewise do not establish a hostile work

25   

26           [7] *See, e.g.*, *Manatt v. Bank of America*, 339 F.3d 792 (9th Cir. 2003) (finding no
     hostile work environment for a few isolated incidents in which plaintiff's co-workers
27   used the phrase "China-man," once pulled their eyes back to imitate Asian appearances,
     told jokes about Chinese, and once mocked plaintiff for her pronunciation); *Kortan v.*
28   *Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work

                                                11

1  environment claim. Accordingly, Plaintiff's hostile work environment claim warrants

2  dismissal because the incidents alleged in the FAC are not sufficiently severe or

3  pervasive. *See* 9th Cir. Civ. Jury Instr. 10.5 (2017 Edition) (June 2019 Update)

4  (requiring conduct to be sufficiently severe or pervasive to establish a hostile work

5  environment claim).

6       **D.    Plaintiff's race/color discrimination claim fails as a matter of law.**

7       A complaint of race/color discrimination under Title VII must plausibly allege that

8  plaintiff: (1) experienced an adverse employment action; and (2) the adverse action was

9  because of his race or color. 9th Cir. Civ. Jury Instr. 10.2 (2017 Edition) (June 2019

10  Update). An "adverse employee action" for purposes of Title VII is any action that

11  negatively impacts an employee's "compensation, terms, conditions or privileges of

12  employment because of his race, color, religion, sex, or national origin." 42 U.S.C. §

13  2000e–2(a)(1); *Vasquez v. Cnty of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Here,

14  Plaintiff has not sufficiently alleged that he suffered any adverse employment action or

15  that agency actions were because of his race or color.

16            1.    <u>Plaintiff fails to present a cognizable claim of discrimination</u>

17                  <u>regarding his lowered performance rating.</u>

18       The only timely claim made in Plaintiff's FAC regards his alleged lowered

19  performance rating. FAC ¶ 16-17. However, Plaintiff's conclusory allegation that this

20  action was "motivated by race [] and color [] discrimination because his performance

21  continued to improve" does not satisfy federal pleading standards. *See Iqbal*, 556 U.S. at

22  678 ("'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice).

23  While a complaint's allegations generally need not be detailed, they must "possess

24  enough heft" to propel the claims across a threshold of plausibility. *Bell Atl. Corp. v.*

25

26  environment where a supervisor referred to females as "castrating bitches," "Madonnas,"
or "Regina" in front of plaintiff on several occasions and directly called plaintiff
"Medea"); *Belgrove v. N. Slope Borough Power, Light & Pub. Works*, No. 3:12-CV-

27  00178 JWS, 2013 WL 6045686 (D. Alaska Nov. 14, 2013) (finding that isolated and
sporadic uses of the "N" word were not sever or pervasive enough to constitute a hostile

28  work environment); *Baptiste v. LIDS*, No. C 12-5209, 2014 WL 523024 (N.D. Cal. Feb.
5, 2014) (single racist comment not enough to establish a hostile work environment).

*Twombly*, 550 U.S. 544, 557 (2007). Even "a liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). Accordingly, a pleading, like Plaintiff's FAC, that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678 (observing that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions") (internal quotations and citations omitted; alteration in original). Other than conclusory allegations, Plaintiff fails to connect his race and color to his lowered performance rating. Such assertions do not create a cognizable claim of discrimination. *Iqbal*, 556 U.S. at 678.

In addition to Plaintiff's failure to meet the federal pleading standards required by *Iqbal*, Plaintiff's claim about his lowered performance rating is not cognizable because it is not an adverse action. *Kraus v. Presidio Trust Facilities Div./Residential Management Branch*, 342 Fed. Appx. 284, 287 (9th Cir. 2009) (finding that receipt of a "3" and not a "4" in a certain performance category is not an adverse action where the overall score is unchanged). Here Plaintiff complains about three of his performance ratings:

(1) 2017 fourth quarter performance rating for the period beginning January 1, 2018 through March 31, 2018, which contains "satisfactory" and "excellent" marks, and which Plaintiff received on April 18, 2018. Bogin Decl. Ex. C, at 24-25.

(2) 2017 annual performance appraisal, covering the period April 1, 2017 to March 31, 2018, which gave Plaintiff an overall "excellent" rating, and which Plaintiff received on April 18, 2018. Ex. H, at 1.

(3) 2018 first quarter performance rating for the period beginning April 1, 2018 through June 30, 2018, which contains "satisfactory" and "excellent" marks, and which Plaintiff alleges he learned about on August 8, 2018. Bogin Decl. Ex. E, at 7.

13

1   Like *Kraus*, Plaintiff's 2017 fourth quarter and 2018 first quarter performance ratings

2   contain identical "satisfactory" and "excellent" marks, and Plaintiff received an

3   "excellent" overall performance rating. 342 Fed. Appx. at 287; Bogin Decl. Ex. C, at 24-

4   25; Ex. E, at 7; Ex. H, at 1.

5       Furthermore, the overall rating in Plaintiff's annual performance appraisal did not

6   change from 2016 (for the period running April 1, 2016 to March 31, 2017) to 2017 (for

7   the period running April 1, 2017 to March 31, 2018), as Plaintiff received an overall

8   performance rating of excellent, or "EX", both years. *Compare* Bogin Decl., Ex. C at 26

9   (2016 Employee Performance Appraisal, dated April 10, 2017) *with* Ex. H at 1 (2017

10   Employee Performance Appraisal, dated April 18, 2018). An unchanged overall rating

11   does not negatively impact Plaintiff's "compensation, terms, conditions or privileges of

12   employment because of his race…[gender], or national origin." *Kraus*, 342 Fed. Appx. at

13   284; Soares-*Haae v. Roche*, 220 Fed. Appx. 695, 696 (9th Cir. 2007) (finding that

14   receipt of even an "average" evaluation is not an adverse action).[8] This is especially true

15   where the unchanged rating is above-average, or in this case, "excellent".

16       To the extent Plaintiff is complaining that he did not receive an "excellent" mark,

17   as opposed to a "satisfactory" mark, in one or more categories on his quarterly

18   performance ratings, such allegations do not constitute an adverse as the quarterly rating

19   had no effect on Plaintiff's overall "excellent" rating. *Kraus*, 342 Fed. Appx. at 287.

20   Accordingly, Plaintiff's claims regarding his performance rating fails.

21          2.    <u>Plaintiff fails to present a cognizable claim of discrimination</u>

22               <u>regarding his remaining unexhausted and untimely claims.</u>

23       Plaintiff's remaining unexhausted and untimely claims such as the leave abuse

24   letter, being called a "coconut" and compared to an inmate, not receiving co-worker

25

26       [8] *See also Kortan v. California Youth Authority,* 217 F.3d 1104, 1112–13 (9th Cir.2000) (holding that mediocre performance evaluations—"rather than sub-average"—

27   that did not give rise to any further negative employment action did not constitute adverse actions); *Lyons v. England,* 307 F.3d 1092, 1118 (9th Cir.2002) (average or

28   mediocre performance ratings, without more, do not rise to the level of adverse employment actions).

1    help, and a suggestion of incompetence, similarly fail as Plaintiff's conclusory

2    allegations do not establish that these claims were adverse employment actions that were

3    motivated by his race or color. *See Iqbal*, 556 U.S. at 678; s*ee also supra* Section II.

4    Such threadbare claims do not satisfy pleading standard necessary to set forth a

5    cognizable claim of discrimination. *Id.*

6         For example, with respect to Plaintiff's comparison to an inmate, Plaintiff does not

7    sufficiently allege how this comparison constituted an "adverse employment action" on

8    account of his race or color that impacts the terms and conditions of his employment.

9    Rather, Plaintiff alleges he was "singled out" to "compare him with an inmate" and there

10   was simply "no legitimate business reason" to make such a comparison. FAC ¶ 14.

11   Plaintiff's EEO Complaint, while not part of the FAC, is illustrative on this point in that

12   it alleges no connection to Plaintiff's race or color, but rather that management

13   "compared his upbringing" to an inmate's insofar as the two "grew up in the same city"

14   to point out that "[they could] be in the same position" but "chose [] different route[s]."

15   Bogin Decl. Ex. C, at 3-4. Indeed, such comments, which do not contain any indication

16   of racial animus, are more plausibly construed as commentary about how certain

17   decisions may lead to different outcomes. *See Twombly*, 550 U.S. at 547 ("Because the

18   plaintiffs have not nudged their claims across the line from conceivable to plausible,

19   their complaint must be dismissed"); *Bruns*, 122 F.3d at 1257 ("[A] liberal interpretation

20   of a . . . complaint may not supply essential elements of the claim that were not initially

21   pled.").

22        As for Plaintiff's allegation that he did not receive help from a co-worker and

23   there was a suggestion of incompetence, Plaintiff has not shown how such comments

24   could plausibly constitute an adverse employment action impacting the terms and

25   conditions of his employment, or discriminatory treatment on account of his race or

26   color. *See Twombly*, 550 U.S. at 555, 570. Likewise, Plaintiff's claim about a leave-

27   usage letter does not demonstrate that this was an adverse employment action impacting

28   or discriminatory treatment on account of his race or color. *Id.* Plaintiff does not even

attempt to connect his receipt of the letter to race or color. FAC ¶ 16. Such conclusory allegations need not be accepted as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Plaintiff simply fails to present a plausible claim of discrimination on account of his race or color. Plaintiff cannot "unlock the doors of discovery . . . armed with nothing more than conclusions," and "vague allegations which then permit a plaintiff to go on a discovery fishing expedition to see if [he] can make them stick are not in the spirit of the federal rules." *Iqbal*, 556 U.S. at 679; *Mainz Brady Grp., Inc. v. Shown*, 2017 WL 4538968, at *2 (W.D. Wash. Oct. 11, 2017). Accordingly, Plaintiff's claims for race and color discrimination should be dismissed.

## V.    CONCLUSION

At most, Plaintiff's only timely and exhausted allegation is for race/color discrimination regarding his allegedly lowered performance rating, even though his overall "excellent" rating remained unchanged. Because such a claim is insufficient to set forth a plausible and cognizable race/color claim, Plaintiff's action warrants dismissal.

Dated: October 7, 2020             Respectfully submitted,

                                   NICOLA T. HANNA
                                   United States Attorney
                                   DAVID M. HARRIS
                                   Assistant United States Attorney
                                   Chief, Civil Division
                                   JOANNE S. OSINOFF
                                   Assistant United States Attorney
                                   Chief, General Civil Section

                                    */s/ Aaron C.G. Carpenter*
                                   AARON C.G. CARPENTER
                                   Assistant United States Attorney

                                   Attorneys for Defendant
                                   William Barr, United States Attorney General